NOT FOR PUBLICATION

FILED
IN CLERKS OFFICE
U.S. DISTRICT COURT E.D. N.Y.
★ JUN 30 2008 ★
P.M. _____
TIME A.M. _____

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
ALICE LEDERMAN,

       Plaintiff,

  -against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.
---------------------------------------------------------- X

**MEMORANDUM
DECISION AND ORDER**

CV-07-3724 (BMC)

**COGAN**, District Judge.

  This is an appeal of the Commissioner of Social Security's denial of plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. Plaintiff contends that, due to lumbar disc disease, cervical disc disease, acute compression fracture in the thoracic spine, obesity, and migraine headaches, she is "disabled" as defined in 42 U.S.C.§§ 423(d)(1)(A) and § 1382c(a)(3)(A). After her claim was denied, plaintiff obtained a hearing before an Administrative Law Judge ("ALJ"), who also found that she was not disabled, and the Appeals Council affirmed. Presently before this Court is defendant's motion for judgment on the pleadings. For the reasons stated below, this case is remanded to the Commissioner for further proceedings consistent with this opinion.

## BACKGROUND

### I. Non-Medical Facts

Plaintiff is a 32-year old female, born in 1976. She weighs 240 pounds, and is 5'7" tall. She has an Associate's Degree.

Plaintiff's most recent employment was in 2002, as a secretary for a physical therapy company, but she ceased working after a few months due to back pain. A vocational expert testified at the hearing that, based on the manner in which plaintiff performed her work, it was properly classified as light, unskilled work. The vocational expert noted, however, that those duties as done by other workers would normally be considered sedentary, skilled work.

Prior to the secretarial position, plaintiff worked as an airport security guard, but stopped working there due to shortness of breath and back pain. While on the job in 2001, plaintiff was injured and received a worker's compensation settlement. That position was deemed by the vocational expert to be light, unskilled work.

Finally, prior to working at the airport, plaintiff worked part-time feeding patients at a nursing home. The vocational expert considered the work to be medium, unskilled labor.

According to plaintiff, the injury she sustained while working at the airport affected her back and resulted in radiating pain to her legs, slow motion, and a drag with her right leg. She testified that she is unable to bend, sit, stand, or walk for long periods of time. She also testified that she cannot lift heavy objects and has problems with her arms, hands, and fingers when reaching for items above her head. Plaintiff stated at the hearing that she is able to walk five blocks without stopping from the pain, can sit for an hour and a half before needing to stand, and can lift items weighing less than five pounds.

Plaintiff testified that the pain causes migraines, which in turn cause her to "black out," collapse, and lose vision and hearing. Before the ALJ, plaintiff stated that her most recent "black out" was three months prior and that she had experienced a headache within the preceding week. Plaintiff also testified that the incidents are triggered by fluorescent lights, perfume, and certain foods and smells. In the event of a "black out," plaintiff says she is "rushed" to the hospital and given injections of Toradol, which stops the migraine and restores her vision. She also testified that she becomes anxious around large groups of people and when she is in small, confined spaces.

Due to her inability to stand for long periods of time and her anxiety around large groups of people, plaintiff testified that she does not shop or use public transportation. She testified that she is driven to her doctors' appointments, but also that she drives herself about once a week.

Plaintiff testified that she needs someone with her at all times in case of a "black out." She lives with her sister, and her mother helps while her sister is at work. Plaintiff can feed herself but she testified that she needs someone to stay with her while she showers.

Plaintiff further testified that, in the course of a typical day, she watches television, walks around her apartment, and sits on the porch. She stated that she reads sometimes, but believes that the print causes her headaches. Due to the reduction in her abilities, plaintiff testified that she is regularly depressed and has anxiety attacks. However, she has not sought help from a mental health professional.

In the Social Security Administration field office interview, the interviewer described her as having no limitations, being well-dressed, well-groomed and cooperative, but a poor historian.

## II. Medical Facts

Plaintiff was first seen at the emergency room of Peninsula Hospital Center in July, 2003, when she complained about a migraine headache. In August, 2003, Dr. Steiner, a neurologist, saw her in consultation. He ordered an MRI and CT scan, both of which were negative, and prescribed a number of medications for pain. Near the end of 2003, plaintiff returned to see Dr. Steiner, complaining of lower back pain but stating that her headaches were better. Dr. Steiner noted plaintiff's decreased range of motion, suggested she avoid lifting, and believed she was unable to perform any work "at [that] time." Plaintiff also began physical therapy with Dr. Lichtenstein at Sands Point Physical Therapy.

In early 2004, plaintiff stated to Dr. Steiner that she had been experiencing headaches for five straight days. The physical examination was unremarkable but her range of motion continued to decrease in the cervical, lumbar, and thoracic spines. In the spring of 2004, plaintiff visited the emergency room, complained of a migraine headache, and was admitted for a day.

Not long after her visit to the emergency room, Dr. Steiner filled out a form for plaintiff's welfare agency and circled terms indicating that plaintiff was "permanently disabled/impaired" and "no work activities for at least 12 months or more." Next to it he wrote, "needs further evaluations and treatments." He stated that her conditions at that time were "spinal stenosis, cervical radiculopathy, [and] lubosacral radiculopathy."

Dr. Caiati examined plaintiff in the summer of 2004, at which point she complained of asthma, neck pain radiating to both arms, and lower back pain radiating to her legs. Dr. Caiati noted that her gait was marked by "steppage with the left leg." Her stance was normal, she needed no help getting on or off the exam table, and she could get up from a chair without difficulty. The range of motion of her cervical spine was within normal limits but she had

decreased range of motion in the lumbar spine. Dr. Caiati concluded that plaintiff had (a) no limitation in sitting, pushing and pulling, (b) minimal limitation in reaching, (c) mild limitation in standing, walking, and climbing, and (d) moderate limitation in lifting and bending.

Dr. Desrouleauz, a neurologist, found that plaintiff demonstrated full motor strength with an unremarkable gait when he examined her.

Near the end of 2004, plaintiff told Dr. Steiner she was having headaches three days per week and was now taking Xanax to stave off anxiety. At that time, Dr. Steiner noted that the neurological exam was within normal limits, including motor exam, sensation, coordination, and deep tendon reflexes. Her gait was also normal. In January, 2005, Dr. Steiner again noted that the examination of plaintiff was within normal limits.

### III. The Commissioner's Decision

In order to uphold the Commissioner's final determination as to whether or not a plaintiff is "disabled," a district court must find that the decision was based upon "correct legal standards" and supported by "substantial evidence in the record as a whole." 42 U.S.C. § 405(g); Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999). The Commissioner, in determining "disability," must follow a five-step analysis. 20 C.F.R. 404.1520; Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). For the purposes of this case, the findings of the ALJ and the Commissioner are the same, since the final decision was that of the ALJ.

First, the Commissioner must determine if the plaintiff is engaged in any substantial gainful activity. It is not disputed that plaintiff has not been gainfully employed or involved in any substantial or gainful activity since June 1, 2002, the alleged onset date.

Second, the Commissioner must determine if the plaintiff has a "severe impairment" which significantly limits the ability to work. The ALJ found that the "severe impairments" this

plaintiff had were: (a) lumbar disc disease; (b) cervical disc disease; (c) acute compression fracture in the thoracic spine; (d) obesity; and (e) migraine headaches. This is not contested.

Third, since plaintiff does have "severe impairments," the Commissioner must determine, based solely on medical evidence, if the impairments correspond to the conditions which are listed as impairments by the Social Security Commission. The ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I." This finding is further discussed below.

Fourth, since plaintiff does not have a presumptive disability, the Commissioner must determine whether plaintiff has the "residual functional capacity," despite the impairment, to perform the past work. The ALJ determined that plaintiff in this case would not be able to perform her past work due to her physical and non-exertional limitations. Plaintiff does not contest the conclusion that she can no longer perform her past work.

Fifth, if a plaintiff is deemed unable to perform her past work, the Commissioner must determine, based on her residual functional capacity, whether there is other work she could do. The ALJ determined that plaintiff had the residual functional capacity to (a) perform light work, (b) lift or carry up to eight pounds, (c) sit, stand, or walk about six hours per day with the option to sit or stand as needed. The ALJ also noted that plaintiff needed to avoid bending, strong odors, and fluorescent lighting.

At the hearing, the ALJ asked the vocational expert whether there were any jobs a hypothetical individual of the same age as plaintiff could perform when taking into account limitations (a), (b), and (c) above, and who also cannot bend and must avoid concentrated odors and fluorescent lighting. The vocational expert testified that the hypothetical person could work

as a small craft assembler (1,819 such jobs locally and 361,000 nationally), a machine tender (8,259 such jobs locally and 1.3 million nationally), or a surveillance system monitor (2,960 such jobs locally and 55,500 nationally). Taking into account a need to avoid small, confined spaces and an inability to reach overhead, the vocational expert stated that the same positions could be performed. If additionally limited to lifting five pounds of weight, walking only five blocks at a time, and standing for no more than one hour continuously, the vocational expert testified that the hypothetical worker could work in small parts assembly, such as jewelry (400 such jobs locally and 129,000 nationally), or as a surveillance system monitor. Based on this information, the ALJ determined that plaintiff was not "disabled" under either Title II or Title XVI.

## DISCUSSION

### I. Standard of Review

District courts are to review decisions made by the ALJ, acting for the Commissioner, to determine whether they are "based upon correct legal standards and [...] supported by substantial evidence in the record as a whole". Rosa, 167 F.3d at 77. "Substantial evidence" is "more than a scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971) (citing Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)). The reviewing court may not "substitute its own judgment for that of the ALJ, even if it might have reached a different result upon a *de novo* review." Jones v. Sullivan, 949 F.2d 57, 59 (2d Cir. 1991) (citing Valente v. Secretary of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984)); Cleveland v. Apfel, 99 F.Supp.2d 374, 379 (S.D.N.Y. 2000). "If there is substantial evidence in the record to support the Commissioner's factual findings they are conclusive and must be upheld." 42 U.S.C. §405(g).

## II. "Disability" Under Title II and Title XVI

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). Substantial gainful activity is defined as "work that involves doing significant and productive physical or mental duties and is done (or intended) for pay or profit." Fuller v. Astrue, No. 07 Civ. 2634, 2008 WL 2381628, at *5 (E.D.N.Y. June 5, 2008). Further, a plaintiff

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

## III. Weight Given to Plaintiff's Testimony

Plaintiff contends she is entirely unable to perform even sedentary work, and that the ALJ erred in disregarding her subjective statements pertaining to the extent of her pain. However, "[t]he ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the pain alleged by the [plaintiff]." Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "In doing so, the ALJ must set forth their reasons for discounting a plaintiff's subjective complaints with sufficient specificity to enable [the district court] to decide whether the determination is supported by substantial evidence." Aronis v. Barnhart, No. 02 Civ. 7660, 2003 WL 22953167, at *7 (S.D.N.Y. Dec. 15, 2003) (citing Miller v. Barnhart, No. 02 Civ. 2777, 2003 WL 749374,

at *7 (S.D.N.Y. Mar. 4, 2003)). If there is substantial evidence supporting the ALJ's decision to disregard the plaintiff's subjective complaints the district court must uphold the decision. Miller, 2003 WL 22953167, at *7 (citing Aponte v. Secretary, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)).

This Court reviews an ALJ's credibility findings with great deference. See Pietrunti v. Director, Workers' Comp. Programs, 119 F.3d 1035, 1042 (2d Cir. 1997) ("credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are patently unreasonable") (citing Lennon v. Waterfront Transport, 20 F.3d 658, 661 (5th Cir. 1994)) (internal quotations omitted); Alvarado v. Barnhart, 432 F.Supp.2d 312, 319 (W.D.N.Y. 2006) ("An ALJ's determination with respect to the credibility of witnesses is also given great deference because the ALJ heard the testimony and observed the demeanor of the witnesses").

The ALJ felt that plaintiff's statements "concerning the intensity, persistence and limiting effects of [the] symptoms [were] not entirely credible." In support of this, the ALJ noted that plaintiff gets "good relief" from Imitrex, a medication prescribed to prevent her headaches. She also recognized that there was inconsistent testimony given by plaintiff regarding her headaches and blackouts, most notably that there is no record of such regular visits to the hospital for her migraines.[1] Conflicting testimony was also given regarding the means by which plaintiff went to and from her doctors' appointments. Plaintiff stated at one point that she would be rushed to the hospital after a headache for a shot of Toradol, and later stated that she gets a shot when she feels a headache coming on. Given the testimony of plaintiff, in addition to the medical evidence in the record, and because the ALJ's determination was not "patently unreasonable," there are

---

[1] Plaintiff states she has been to the hospital for her "black outs" approximately 40 times. There is evidence from the hospital of her having been only twice.

Page 9 of 16

sufficient articulated grounds for the ALJ's determination to give limited weight to plaintiff's testimony.

**IV. Weight Given to Treating Physician's Testimony**

Plaintiff argues that the testimony of Dr. Steiner, the treating physician, was not given the required weight in the disability determination. Although an ALJ is not bound by the opinion of a treating physician, that opinion is given controlling weight if it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 416.927(d)(2); 20 C.F.R.§ 404.1527(d)(2). In the event that the treating physician's opinion is not given controlling weight,

> the SSA must assess the following factors in determining how much weight to afford that opinion: (1) the frequency of the examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) other relevant factors.

Hartnett v. Apfel, 21 F.Supp.2d 217, 221 (E.D.N.Y. 1998) (citing 20 C.F.R. § 404.1527(d)(2); 20 C.F.R. § 416.927(d)(2)). If the ALJ does not give the treating physician's opinion controlling weight, she must articulate reasons for the amount of weight that is given. Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); Torres v. Astrue, No. 07 Civ. 6235L, 2008 WL 1947018, at *6 (W.D.N.Y May 5, 2008).

In particular, plaintiff argued that controlling weight should have been given to a form Dr. Steiner filled out, on which he circled that plaintiff was "permanently impaired/disabled" and could perform "no work activities for at least 12 months or more." Immediately after circling those fields, he wrote that plaintiff "needs further evaluations and treatments." Additionally, Dr. Steiner stated on the form that plaintiff had spinal stenosis, among other conditions.

The ALJ discounted Dr. Steiner's opinions, holding that, "I give the opinion in this form very little weight[.]" She based that conclusion on the following reasoning:

> First of all, none of the imaging studies showed spinal stenosis; also, since he noted that she needs further evaluations, he inherently admits that he did not know what her capabilities would be in the future after the evaluations and treatment; furthermore, the form was completed for the purpose of having the claimant's welfare benefits continue.

The ALJ's decision did not explicitly discuss any of the factors required in determining weighting listed as (1) through (5), above. As a result, "it is unclear on the face of the ALJ's opinion whether the ALJ considered... the applicability of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). In Halloran, rather than automatically remanding the case to the Commissioner, the Second Circuit conducted a "searching review of the record to assure [that the plaintiff] received the rule's procedural advantages." Id. Although the ALJ in that case failed to cite to the listed reasons for affording less-than-controlling weight to a treating physician's medical opinions, the Second Circuit was able to "deduce that the ALJ considered the treating physician's opinion and explained the [in]consistency of [the treating physician's] opinion 'with the record as a whole." Id. (citing 20 C.F.R. § 404.1527(d)(4)). The Court also noted that the standardized form, which, as here, was the major point of contention, was "only marginally useful for purposes of creating a meaningful and reviewable factual record." Halloran, 362 F.3d at 31. Since "the substance of the treating physician rule was not traversed," the Second Circuit recognized that remanding to the Commissioner was unnecessary and upheld the ALJ's decision. Id. at 33.

Likewise, the ALJ hearing the instant case considered Dr. Steiner's opinion and its inconsistency "with the record as a whole." In her decision, the ALJ detailed the

medical evidence that was provided to her. This included evidence and opinions from Dr. Caiati and Dr. Lichtenstein in opposition to the conclusions drawn by Dr. Steiner on his form. The medical evidence from Dr. Steiner's own treatment of plaintiff showed that the examinations were "unremarkable" or "within normal limits." Additionally, the conclusions made by Dr. Steiner were made on a standardized form, which he qualified himself by adding "needs further evaluations and treatment."

Finally, opinions on issues which are dispositive of a case, such as Dr. Steiner's form stating that plaintiff was disabled, are not subject to the treating physician rule. See 20 C.F.R. § 404.1527(e).[2] Finding a plaintiff to be disabled is within the province of the ALJ, and although a doctor's medical evidence and opinions must be taken into account, the physician's determinations alone do not require an award of benefits. See 20 C.F.R. § 404.1527(e); 20 C.F.R. § 404.1527(e)(2). Therefore, Dr. Steiner's conclusion that plaintiff was disabled, alone, could not be relied on by plaintiff to argue that the "treating physician rule" was not properly applied because his conclusion was not valid medical opinion for the purposes of the disability evaluation. Since the substance of the treating physician rule was not violated, and the non-conclusory medical evidence in the record

---

[2] (e) Medical source opinions on issues reserved to the Commissioner. Opinions on some issues, such as the examples that follow, are not medical opinions, [...] but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability.

(1) Opinions that you are disabled. We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.

(2) Other opinions on issues reserved to the Commissioner. We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see § 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner. 20 C.F.R. § 404.1527(e)

substantially supported the ALJ's determination, this Court finds that the ALJ properly considered Dr. Steiner's opinion.

**V. Plaintiff's Injuries Compared to Listed Impairments of Appendix I**

The third step of the "disability" analysis is whether, based only on medical evidence, plaintiff has an impairment that is listed in 20 C.F.R., Pt. 404, Subpt. P, Appendix I. Berry v. Schweiker, 675 F.2d 464, 465 (2d Cir. 1982). Although an ALJ need not repeat every piece of factual support for her determination as to the similarity of an impairment to the listings of 20 C.F.R., Part 404, Subpart P., Appendix I., she should set forth a specific rationale in support of that conclusion unless "portions of the ALJ's decision and the evidence before [her] indicate that [her] conclusion was supported by substantial evidence." Berry, 675 F.2d at 469.

Here, the ALJ determined at step three that, "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. I particularly considered the Musculoskeletal System and Neurological impairments." (Citations omitted). The ALJ did not set forth a specific rationale for her determination that plaintiff did not have a listed impairment and, as previously noted, substantial evidence is required to support that conclusion or else this Court must remand for further inquiry. 20 C.F.R. Part 404, Subpart P, Appendix I.; Berry, 675 F.2d at 469. The Second Circuit has cautioned that,

> [c]ases may arise… in which we would be unable to fathom the ALJ's rationale in relation to evidence in the record, especially where credibility determinations and inference drawing is required of the ALJ. In such instances, we would not hesitate to remand the case for further findings or a clearer explanation for the decision.

Berry, 675 F.2d at 469.

The listings under 20 C.F.R. Part 404 require plaintiff to demonstrate that her impairments satisfy the requirements of the listings or are "medical[ly] equ[ivalent]" to such listings. 20 C.F.R. Part 404, Subpart P, Appendix I, (c)(5). Of the listed requirements under the Musculoskeletal System, the only potentially applicable subsections are within § 1.04.[3] Additionally, subpart Q of the Musculoskeletal System section directs that,

> [t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process... adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Part 404, Subpart P, Appendix I, §1 Musculoskeletal System, Subsection Q.

After reviewing the medical evidence and the listings under § 1.04, this Court is unable to fathom the ALJ's rationale which led to a finding that plaintiff did not satisfy the listing requirements. Given the similarities between her medical evidence and the listings, and the importance and irreproducibility of the credibility determinations made by the ALJ in her decision, this Court must remand the case for further clarification and/or explanation as to why plaintiff's impairments do or do not satisfy those requirements.

---

[3] § 1.04: Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of nerve root (including the cauda equina) or the spinal cord. With:

(a) Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or,

(b) Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or,

(c) Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00(b)(2)(B).

This Court finds, however, that substantial evidence supports the ALJ's conclusion that plaintiff's impairments did not satisfy the requirements of any listing under § 11, Neurological Impairments.

**VI. Accuracy of the Vocational Expert's Hypothetical**

According to plaintiff, the hypothetical situations given to the vocational expert did not reflect all of her limitations and, as a result, have no evidentiary value. Plaintiff stated that she tried sedentary work, while employed at the physical therapy office, but it was too painful. She alleges that, given this fact, the ALJ and vocational expert simply disregarded her inability to perform sedentary work. However, the vocational expert testified that the particular way plaintiff performed the job made her duties fall under the "light" work category, even though normal secretarial work would be sedentary.

The ALJ questioned the vocational expert regarding whether jobs existed in the national economy for an individual with plaintiff's age, education, work experience, and residual functional capacity. The vocational expert testified that such an individual would be able to perform the requirements of light, unskilled occupations, such as an assembler of small products (1,819 such jobs exist locally, 361,000 nationally), machine tender (8,259 such jobs exist locally, and 1.3 million nationally), and sedentary unskilled jobs, such as a surveillance system monitor (2,960 such jobs locally, 55,000 nationally). The ALJ then requested that the vocational expert add in a limitation requiring the avoidance of crowds and small confined spaces. The expert stated that the same jobs would be possible. Based on these numbers, the ALJ found that "[plaintiff] has been capable of making a successful adjustment to other work that exists in significant numbers in the national economy."

Plaintiff argues that the vocational expert did not take into account the number of those jobs which would utilize fluorescent lighting. Indeed, the ALJ's decision did not mention the fluorescent lighting requirement as a factor in the hypothetical given to the vocational expert. This was apparently an oversight by the ALJ. However, as the hearing transcript shows, the ALJ specifically asked the vocational expert if the same positions could be performed with a limitation on fluorescent lighting. The vocational expert stated that they could be. Therefore, the hypothetical limitations given by the ALJ to the vocational expert amounted to an accurate portrayal of plaintiff's limitations.

The Court has reviewed plaintiff's remaining points and finds them to be without merit.

## CONCLUSION

For the reasons set forth above, this case is remanded to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED.**

/s/(BMC)

_____
U.S.D.J.

Dated: Brooklyn, New York
June 27, 2008